IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISIONS

| | | |
|---|---|---|
| LILLIE M., | § | |
|    PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:18-CV-3277-K-BK |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|    DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this cause is before the Court for a recommendation on the parties' cross-motions for summary judgment.[1] Doc 16; Doc 17. For the reasons that follow, Plaintiff's construed motion for summary judgment should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I.   BACKGROUND**

   **A.  Procedural History**

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act

---

[1] Plaintiff did not cite to the record as instructed or file a motion for summary judgment pursuant to the Court's *Scheduling Order*. *See* Doc. 13 at 1-2. In the interest of judicial efficiency, the Court construes her brief as moving for summary judgement in her favor. Future failure to comply with Court orders, however, may result in non-compliant documents being stricken from the record.

(the "Act"). Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff was 51 years old on the date of her hearing before the administrative law judge ("ALJ"). Doc. 12-1 at 54. She had graduated high school and had past relevant work experience as a medical fee clerk, data entry clerk, and receiving checker. Doc. 12-1 at 67. Plaintiff alleged that she became disabled in March 2014. Doc. 12-1 at 157.

In terms of Plaintiff's relevant medical history, she presented to the emergency room with lower body edema and blisters all over both legs in February 2014. Doc. 12-1 at 405-06. After discharge, she followed up with Dr. Thomas Kraven, M.D. at the hospital's wound care clinic. Doc. 12-1 at 408. Dr. Kraven noted that Plaintiff had multiple leg and heel ulcers and advised her to elevate her legs for at least 30 minutes every hour when she was not in bed, as that was "the most important part of her treatment for her legs." Doc. 12-1 at 408, 410. By May 2014, Dr. Kraven noted that Plaintiff's ulcers had rapidly improved due to her compliance in elevating, and that she should continue to do so. Doc. 12-1 at 412. In November 2014, and again in February 2015, Plaintiff reported that she "felt great" despite chronic neuropathy in both feet, and she walked with a normal gait. Doc. 12-1 at 462, 469, 471. She also exhibited virtually no lower leg edema. *See* Doc. 12-1 at 667, 673; Doc. 12-1 at 707, 710; Doc. 12-1 at 750.

In December 2015, Plaintiff underwent a consultative examination by Dr. John Wofford, M.D., where she reported having "vision issues." Doc. 12-1 at 713. Dr. Wofford determined that Plaintiff's uncorrected vision was 20/70 in the left eye and 20/100 in the right eye, and she had decreased visual acuity without corrective lenses. Doc. 12-1 at 715, 718-19. Dr. Wofford

2

concluded that Plaintiff could sit normally in an eight-hour workday with typical breaks. Doc. 12-1 at 718.

### C. The ALJ's Findings

In December 2017, the ALJ found that Plaintiff had the severe impairments of "insulin dependent diabetes mellitus Type II, hypertension, history of congestive heart failure, history of coronary artery bypass surgery, and obesity," but that she did not have an impairment or combination of impairments that met or medically equaled one of the Listings. Doc. 12-1 at 21-22. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work and, based on the testimony of a vocational expert, she could perform her past relevant work as a medical fee clerk and was thus not disabled within the meaning of the Act. Doc. 12-1 at 22, 26.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing his past work, other factors

including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to

probe the record to find supporting evidence for one side or the other.  See FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III. ANALYSIS

#### A. Parties' Arguments and Analysis

*1. Plaintiff's Visual Impairment*

Plaintiff first argues that the ALJ erred in not finding her visual impairment "severe" at step two of the sequential evaluation, and the error was not harmless because the position of medical fee clerk requires frequent close visual acuity.  Doc. 16 at 13-16.

In this Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Upon review of the evidence, the Court finds that the ALJ did not err in this regard.

First, Plaintiff never even mentioned having a vision impairment in her application for benefits.  See Doc. 12-1 at 195.  Additionally, Plaintiff never informed any of her treating doctors that she had trouble seeing.  She only addressed it with the consultative examiner, Dr. Wofford, whose report suggests that her vision could be corrected with eyeglasses or contact

5

lenses.[2]  Doc. 12-1 at 719.  Plaintiff's reports of her own activities also suggest that her vision impairment was not severe as defined by *Stone*.  She acknowledged that she and her husband went to the movies and that she could follow written instructions, pay bills, count change, and use a checkbook.  Doc. 12-1 at 65; Doc. 12-1 at 216, 218.

Even if the ALJ erred in not finding Plaintiff's visual impairment severe, that error was harmless.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (holding that procedural errors warrant remand only if they cast doubt on the existence of substantial evidence to support the ALJ's denial of benefits).  Plaintiff maintains that her past relevant work as a medical fee clerk required frequent up-close vision.  The record, however, reflects that Plaintiff's vision problems affected her ability to drive, not her near-vision.  Plaintiff testified at the administrative hearing that although she had just gotten glasses six weeks earlier, she was afraid to drive because she could not see that well.  Doc. 12-1 at 55.  She explained that her glasses did not help her vision because when she went outside, the light bothered her eyes and she had to put sunglasses on, but she acknowledged that her vision was "not bad."  Doc. 12-1 at 55-56; *see also* Doc. 12-1 at 208 ("Will need to go to the eye doctors, cause my eyes are stopping me from driving."); Doc. 12-1 at 216 ("don't drive do [sic] to diabetes – eyes are bad."); Doc. 12-1 at 254 ("I can't drive do [sic] to my eyes.  I have to wear sun glasses when it is slightly sunny to be able to see a little bit . . ."). Defendant is entitled to summary judgment on this issue.

---

[2] Indeed, although Plaintiff's doctors had advised her since at least April 2014 about the risks her poorly controlled diabetes posed to her vision, she did not even get glasses until February 2017. Doc. 12-1 at 294, 640, 666.

6

*2. Need to Elevate Legs*

Plaintiff next urges that the ALJ erred in his RFC assessment by failing to account for her need to elevate her legs while sitting for prolonged periods, per Dr. Kraven's instructions. Doc. 16 at 16-21. Defendant counters that the evidence does not reflect that Plaintiff needed to continue elevating her legs after Dr. Kraven concluded his treatment of her foot and leg ulcers in June 2014. Doc. 17-1 at 4-5. The Court concurs.

An ALJ's RFC finding is an assessment, based on all of the relevant evidence in the record, of a claimant's ability to work despite her impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding both their severe and non-severe physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

As Defendant correctly notes, Dr. Kraven treated Plaintiff on only a few occasions in 2014 and only in relation to the ulcerated tissue on her lower legs and feet. The direction to elevate Plaintiff's legs was relevant solely to that treatment process. *See* Doc. 12-1 at 410 (Dr. Kraven's note that he had informed Plaintiff that elevating was "the most important part of her treatment for her legs."). There are no further treatment records involving Dr. Kraven and — importantly — no further mention of ulcerated or blistered tissue that would call for continued elevation of Plaintiff's legs. Nor is there record of any other health care provider ever suggesting that she do so. Indeed, Dr. Wofford concluded that Plaintiff could sit normally in an eight-hour workday with the usual breaks. Doc. 12-1 at 718. Defendant is entitled to summary judgment on this issue as well.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's construed motion for summary judgment, Doc. 16, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 17, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on February 7, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).